**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SANDRA FOSTER AS CONSERVATOR
AND NEXT OF KIN OF AVERY T. HADELY,

    Plaintiff,

vs.                                                                                    No. CIV-10-01075 WJ/ACT

**GROUP 1**:
BERNALILLO COUNTY BOARD OF COMMISSIONERS,
being ALAN ARMIJO, in his official capacity, ART DE LA
CRUZ, in his official capacity, MAGGIE HART, in her official
capacity, MICHAEL C. WEINER, in his official capacity,
MICHAEL BRASHER, in his official capacity,
**GROUP 2**:
THADDEUS LUCERO, in his official capacity and individual capacity,
JOHN DANTIS, in his former official and individual capacity,
**GROUP 3**:
RON TORRES, in his official capacity as the Director of the
METROPOLITAN DETENTION CENTER, and in his individual
capacity, MIKE SISNEROS, in his official and individual capacity,
TOMMY TRUJILLO, in his official and individual capacity, GLORIA
BROADNAX, in her official and individual capacity, MARY
JACKSON, in her official and individual capacities, OFFICER
ANDRES VERDUGO in his official and individual capacities,
OFFICER ROSLYN JUANICO, in her official and individual capacities,
OFFICER JUAN RAMIEREZ, in his official and individual capacity,
MDC EMPLOYEES JOHN AND/OR JANE DOES 1-5, in their official
and individual capacities,
**GROUP 4:**
CORRECTIONAL MEDICAL SERVICES, INC., CMS,
JOHN AND/OR JANE DOES 1-5 in their official and individual
capacities,
**GROUP 5:**
MDC INMATES JESUS CORDOVA, KEOLA KAULA, AND JOHN DOES 1-5,

    Defendants.

**ORDER ON DISCOVERY MOTION**

1

This matter is before the Court on County Defendants Bernalillo County Board of Commissioners, Alan Armijo, Art de la Cruz, Maggie Hart, Michael C. Weiner, Michael Brasher, Thaddeus Lucero, John Dantis, Ron Torres, Mike Sisneros, Tommy Trujillo, Gloria Broadnax, Mary Jackson, and Andres Verdugo's ("County Defendants") Motion to Compel No. I Production or Inspection of Documents Subpoenaed from the Corrections Department ("Motion to Compel") [Doc. 35], filed on June 13, 2011. The subpoena which is the subject of the Motion to Compel was served on the New Mexico Corrections Department ("NMCD"), a non-party, on May 17, 2011. [Doc. 35, Ex. A.] The NMCD provided timely written objections to the County Defendants pursuant to Fed.R.Civ. 45(c) on May 23, 2011 [Doc. 35 at Ex. B]. In the objections, Carlos Elizondo, Deputy General Counsel for the NMCD stated that the requested documents would not be produced unless a "specific order. . . [is issued] by the sentencing judge." [*Id.*] The Deputy General Counsel did not offer any authority for linking his compliance to the federal subpoena to an order issued by the sentencing judge.[1]

County Defendants then filed the present Motion to Compel. Neither NMCD nor Plaintiff Sandra Foster as Conservator and next of Kin of Avery T. Hadely filed any objections nor did either seek a protective order.[2] On July 20, 2011, County Defendants filed a Notice of

---

[1] The Court notes that the New Mexico Probation and Parole Act states the following: "[t]he board, in the case of parole records, and the sentencing judge, in the case of probation records, in their discretion, whenever the best interest or welfare of a particular probationer or prisoner makes such action desirable or helpful, may permit inspection of the reports, or parts thereof, by the probationer, prisoner or his attorney." NASA 1078, § 31-21-6.

[2] A party's failure "to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). However, in this case the Motion to Compel seeks documents and records which NMCD claims are privileged under New Mexico law and therefore the Court will not grant the Motion to Compel without discussion.

Completion of Briefing for the Motion to Compel. [Doc. 42.]

I.      Background

Plaintiff, Sandra Foster, brings her Complaint as conservator for Avery Hadely ("Hadely"), a 41-year old man who suffered allegedly severe and lasting injuries when he was an inmate at the Bernalillo County's Metropolitan Detention Center ("MDC"). Hadely was in custody in MDC for violating parole. [Doc. 1 at pp.1-2, § Introduction.] Plaintiff alleges that Hadely should have been segregated from the general population and kept apart from other inmates who were hostile to him. [*Id.*] Plaintiff alleges that on two occasions, the MDC correction officers "popped" open the doors of Hadely's cell to allow these inmates access to Hadely and that as a result Hadely suffered beatings by these inmates. [*Id.* at p. 5, ¶¶ 19, 20, 22 and 23.]

There are multiple claims against the County Defendants.[3] Several claims assert causes of action or claims for damages under 42 U.S.C. § 1983 and are as follows: (1) a claim that Defendants refused or neglected to prevent the beating of Hadely [Doc. 1 at Count 1]; (2) two claims that Defendants failed to adequately train correction officers or other personnel [*Id.* at Count 2 and Count 11]; (3) a claim that Defendants failed to supervise correction officers [*Id.* at Count 3]; and (4) a claim for loss of consortium.[4] [*Id.* at Count 4]. Count 5 asserts a claim of conspiracy to cause bodily harm in November 2008 directed to all Defendants. [Doc. 1 at Count

---

[3] The Court merely summarizes the claims here which could be construed as directed at the County Defendants but is not making a determination as which claims actually are asserted against the County Defendants. County Defendants state that Counts 1-4 and Count 7 are directed against them. [Doc. 35 at pp. 4-5.]

[4] The Court agrees with the County Defendants that Hadely's claim of "loss of consortium" is a damage claim and not a separate cause of action under § 1983. [Doc. 35 at p. 5.]

5 at p. 9.]  Count 7 asserts a cause of action under the New Mexico Human Rights Act ("NMHRA") which alleges that County Defendants and others improperly classified Hadely in a manner that affects his medical treatment and living conditions and services provided by M.C. because of his "race, skin color, physical and/or mental handicap." [*Id.* at p. 10, ¶ 60.] Counts 10, 11, and 12 assert state law tort claims against all Defendants.[5] [Doc. 1 at pp. 14-15.]

On May 17, 2010, the County Defendants subpoenaed NMCD for twelve different sets of records. [Doc. 35, Ex. A.] County Defendants state that the requested records fall into five groups as follows:

> (1) records of correctional investigations or reports and inmate file records (*e.g.,* incident reports, inmate alert cards, admission summary, progress reports);
> (2) records of visitor files (*e.g.*, visitor questionnaires or applications);
> (3) law enforcement records that are original records of incidents that have been reported to a law enforcement agency and are organized chronologically (*e.g.*, police blotters and offense reports, FBI criminal history or "rap sheets," escape flyers);
> (4) educational records; and
> (5) probation and parole records (*e.g.*, pre-sentence reports, pre-parole reports, supervision histories while on probation or parole).

[Doc. 35 at pp. 6-7.]

NMCD, by way of written objections sent to the County Defendants' counsel, asserted that most of the records in the subpoena were privileged[6] under New Mexico's Probation and Parole Act ("PPA"), NASA 1978, §§ 31-21-3 to -19. [Doc. 35 at Ex. B.]  The Deputy General Counsel for NMCD advised the County Defendants that he would not produce the following documents unless he received "a specific court order (not simply a subpoena) issued by the

---

[5]The state law claims are for intentional and negligent infliction of emotional distress and for prima facie tort.

[6]The NMCD said it would produce the judgment, sentence and indictment, which are all matters of public record. [Doc. 35-2 at Ex. B.]

sentencing judge:" (1) any records withheld pursuant to the PPA, (2) other documents he asserts are subject to agreements with other law enforcement agencies, and (3) the visitor lists which he claims contains personal information on visitors which are not a matter of public record. [Doc. 35, Ex. B.]

County Defendants then filed the subject Motion to Compel.  County Defendants argue that the NMCD "construes the privilege provision of the PPA too broadly." [Doc. 35 at p. 3.] County Defendants maintain that most of the subpoenaed documents are not "social records" privileged under the PPA, and further, to the extent that they are privileged, it would not apply in a federal case which employs federal privilege law. [*Id.*] In addition, the County Defendants argue that the other two categories of "privilege" asserted by the NMCD (documents subject to agreements with other law enforcement agencies and visitor lists) are not privileged under federal law.

The subpoena requests the following documents and the Court notes NMCD's specific objection to producing the requested documents immediately following the request.

> Request 1.  Any investigations, reports or other documents containing confidential information.
> *Objection*:   Objection based on PPA.
>
> Request 2.  Any pre-sentence report, pre-parole report or supervision history while on probation or parole.
> *Objection*:   Objection based on PPA.
>
> Request 3.  Any admission summary or progress report.
> *Objection*:   Objection based on PPA.
>
> Request 4.  Any police reports.
> *Objection*:   NMCD states that these documents "must be sought from the specific agencies."  NMCD explains that "[u]nder agreements reached between NMCD and police agencies, as well as federal law enforcement agencies, we are prohibited from releasing such materials that come into our

        possession, as these items are utilized exclusively by law enforcement."

Request 5.    Any FBI Criminal History or "rap sheets."
        *Objection*    NMCD states that these documents "must be sought from the specific agencies." NMCD explains that "[u]nder agreements reached between NMCD and police agencies, as well as federal law enforcement agencies, we are prohibited from releasing such materials that come into our possession, as these items are utilized exclusively by law enforcement."

Request 6.    Any enemy alert cards.
        *Objection*:    Objection based on PPA.

Request 7.    Any escape flyer.
        *Objection*:    Objection based on PPA.

Request 8.    Any visitor questionnaires or application forms.
        *Objection*:    Objection because "visitors are not a matter of public record. . . and such documents contain personal information on the individuals that are not a matter of public record such as birthdates [sic], social security numbers, and other personal identifying information."

Request 9.    Inmate Avery Hadely's inmate file.
        *Objection*:    Objection based on PPA.

Request 10.    Inmate Avery Hadely's probation file.
        *Objection:*    Objection based on PPA.

Request 11.    Inmate Avery Hadely's parole file.
        *Objection*:    Objection based on PPA (but NMCD notes that Judgment, Sentence and Indictment can be produced as matters of public record).

Request 12.    Inmate Avery Hadely's educational file.
        *Objection:*    Objection based on PPA (but NMCD notes that Judgment, Sentence and Indictment can be produced as matters of public record).

[Doc. 35 at Ex. A and B.]

II.     Federal Privilege Law Applies in This Case.

County Defendants state that Hadely was incarcerated in state prison in the 1980's, and again in 1992, 1995, 1996, and from 1999-2008. [Doc. 35 at p. 5.]  County Defendants "believe that the New Mexico Corrections Department will have records on Hadely's history of interaction with other inmates, his family ties, education and employment history and physical and or mental handicaps that are not available through other sources." [*Id.* at pp.5-6.] They state that the subpoenaed records may be relevant to Hadely's damage claims (including loss of consortium[7] and loss of earnings), to his claims that he "should have been segregated from the general population and particular inmates," and to his claim that he was "improperly classified for placement at M.C. and denied use of facilities and services because of a disability." [*Id.* ]

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1)(2011).  The rule also states: "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1) (emphasis added).  This good-cause standard is intended to be flexible. Fed.R.Civ.P. 26 advisory committee's note (2000).  "When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. '[T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.'"  *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 -1189 (10th Cir. 2009), *quoting* Fed.R.Civ.P. 26 advisory

---

[7]Hadely's Complaint alleges lost relationships with family member, including his twin, his sisters, nieces, nephews and his deceased father. [Doc. 1 at ¶¶ 47-49.

committee's note (2000). The Court finds that, under the Federal Rules of Civil Procedure, the requested information which is the subject of the County Defendants' Motion to Compel is relevant to Hadely's claims and damages.

NMCD, a non-party witness, has asserted a state law privilege and other privileges and is withholding the subpoenaed documents and information pursuant to these privileges. [Doc. 35, Ex. B.]  "All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." *Pearson v. Miller*, 211 F.3d 57, 65 (3rd Cir. 2000).  Rule 501 provides:

> [T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision therefor shall be determined in accordance with State law.

Thus, "[p]ursuant to [R]ule 501, federal courts look to state law to determine the applicability of privileges 'with respect to an element of a claim or defense as to which State law supplies the rule of decision.'" *Vondrak v. City of Las Cruces*, 760 F.Supp.2nd 1170, 1173 (D.N.M. 2009).  However, where a federal court is presiding over a case that is based on federal question jurisdiction, it employs "the principles of common law as they may be interpreted by the court of the United States in the light of reason and experience" to govern "the existence and scope of a privilege." *Id*.

Where, as in this case, a plaintiff has pleaded both federal and state law claims, an issue arises as to whether federal privilege should apply.  Given that the evidence that the County Defendants seek is relevant to both Hadely's federal and state law claims, the Court finds that any attempt to apply federal privilege law to the federal claims and the state privilege law to the

state law claims is unworkable. *Accord Pearson*, 211 F.3d at 65.

In 2009, the Honorable James O. Browning did an excellent survey of the federal circuits' positions on this very issue in *Vondrak v. City of Las Cruces*, 760 F.Supp.2d 1176.

> Where a privilege is asserted for evidence relevant both to federal and pendent state-law claims, most circuit courts have either held that federal privilege law governs or approved of such an approach without explicitly adopting it. *See In re Sealed Case* (Medical Records), 381 F.3d 1205, 1212–13 (D.C.Cir.2004) (" 'The usual solution by the courts' in such cases 'has been a preference for federal privilege law when it conflicts with state privilege law.' ") (quoting 3 J. McLaughlin, Weinstein's Federal Evidence § 501.02[2] [c], at 501–14 (2d ed. 2004)) (footnote omitted); *Virmani v. Novant Health Incorp.*, 259 F.3d 284, 287 n. 3 (4th Cir.2001) ("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies."); *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir.2000) (concluding that, where there is a conflict between federal and state privilege law because of the existence of federal and pendent state-law claims, the United States Court of Appeals for the Third Circuit "has resolved this potential conflict in favor of federal privilege law" because "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable") (internal quotation marks and citations omitted); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir.1992) ("The existence of pendent state law claims does not relieve [courts] of [their] obligation to apply the federal law of privilege."); *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir.1992) ("Courts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim."); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir.1992) (applying federal privilege law applies in a case involving both federal and pendent state-law claims); *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987) (declaring that, where the evidence sought "is relevant to both the federal and state claims," courts "consistently have held that the asserted privileges are governed by the principles of federal law"); *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981).
>
> The United States Court of Appeals for the Tenth Circuit has differed from the other circuit courts to the extent that it has held that, where there are federal and state law claims, "[a]s to state causes of action, a federal court should look to state law in deciding privilege questions." *Motley v. Marathon Oil Co.*, 71 F.3d at 1551. Nevertheless, the Tenth Circuit has not confronted the issue presented in this case, where evidence allegedly subject to a privilege is relevant to both the federal and state-law claims in the case. The Court believes, however, that the weight of circuit-court authority, combined with the practical considerations involved with running discovery and trials, indicate that the Tenth Circuit would follow the majority and find that federal privilege law applies under such circumstances.

*Id.* at 1176.

The Court agrees that federal privilege law applies in the circumstances of this case. The general test to determine whether a matter is privileged under federal law is whether the proffered privilege "promotes sufficiently important interests to outweigh the need for probative evidence." *Trammel v. United States*, 445 U.S. 40, 51 (1980).  However, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to the federal substantive and procedural policy."  *Pearson*, 211 F.3d at 67, *quoting United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976).  "Thus a federal court 'may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state." *Id.*, *quoting D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 471 (1942).

Importantly, "[t]he appropriateness of deference to a state's law of privilege is diminished . . . in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege." *Pearson*, 211 F.3d at 68.  This same analysis should apply to "color of law" cases such as the present one because it does not make "any sense to allow the state, under whose color of authority officers have allegedly violated rights to limit unilaterally the availability of evidence." *Id. quoting Longenbach v. McGonigle*, 750 F.Supp. 178, 180-81(E.D. Pa. 1990).

III.   Analysis

The documents the County Defendants subpoenaed and that were objected to by the NMCD fall into three categories.  Each category of objection will be addressed in turn.

   A.  Documents withheld as privileged under the PPA.

Section 31-21-6 of the PPA provides that

> [a]ll social records, including presentence reports, pre-parole reports and supervision histories, obtained by the board are privileged and shall not be disclosed directly or indirectly to anyone other than the board, director, sentencing guidelines commission or sentencing judge, but authorities of the institution in which the prisoner is confined shall have access to all records and reports concerning the prisoner, and the sentencing judge, board and director shall have access to all records concerning the prisoner. The board, in the case of parole records, and the sentencing judge, in the case of probation records, in their discretion, whenever the best interest or welfare of a particular probationer or prisoner makes such action desirable or helpful, may permit inspection of the reports, or parts thereof, by the probationer, prisoner or his attorney. The sentencing guidelines commission shall have access to the social records for statistical and policymaking purposes only and shall not release any in formation identifying any individual.

[*Id.*]

"Social records" is not defined in the PPA. However, the New Mexico Court of Appeals has construed the term as referring to the "types of personal observations, sensitive data, and recommendations that probation and parole officers use to inform the probation and parole board or sentencing judge regarding whether to grant parole or probation." *State v. Rickard*, 118 N.M. 312, 314, 881 P.2d 57, 59 (Ct. App. 1994), *rev'd in part on other grounds*, 118 N.M. 586, 884 P.2d 477 (1994).

In addition, as pointed out by the County Defendants, the NMCD's Inmate Record Index segregates categories of inmate records in such a way that Parole Board actions, progress reports and hearing materials are filed separated under "Probation and Parole." [Doc. 35 at pp. 13-14, and at Ex. E (NMCD, Inmate Records Policy).] When comparing the types of documents filed under "Probation and Parole" with the other types of documents filed under other categories from Inmate Records[8] it appears to the Court that "social records" privileged under the PPA are

---

[8]*See, e.g.,* "Reception and Diagnostic Data" (admission summaries, police reports, FBI rap sheets and presentence reports"), "Inmate Adjustment" (disciplinary reports, inmate requests for administrative segregation, and institutional progress reports documenting inmate behavior), and "General Information" (visiting logs, visiting questionnaires and inmate requests regarding classification and complaints.) [Doc. 35 at pp. 13-14, and at Ex. E (NMCD, Inmate Records

limited to records that recount the observations and recommendations made by probation and parole officers.

Therefore, the following files and documents that NMCD seeks to withhold do not definitively fall under the asserted PPA privilege and will be produced to the County Defendants: any investigations, reports or other documents containing confidential information (Request 1), any admission summary or progress report (Request 3), any enemy alert cards (Request 6), Inmate Avery Hadely's inmate file (Request 9), and Inmate Avery Hadely's educational file (Request 12).

The following documents, which are privileged under the PPA in that they relate to probation and parole records but which are still possibly relevant under federal law, will be produced to the Court for an *in camera* review to determine if there is information relevant to the claims in this lawsuit, and if so, whether the documents can produced to the County Defendants in redacted form: any presentence report, pre-parole report or supervision history while on probation or parole (Request 2), Inmate Avery Hadely's probation file (Request 10), Inmate Avery Hadely's parole file (Request 11).

    B.    <u>Documents withheld by NMCD as privileged on the grounds they are subject to agreements with other law enforcement agencies</u>.

NMCD advised the County Defendants that it is prohibited from releasing any police reports or FBI reports because "such materials that come into our possession . . . are utilized exclusively by law enforcement." [Doc. 35-2, Ex. B.] The NMCD did not provide any authority regarding this alleged privilege and the Court is unaware of any possible privilege which would prohibit the production of these subpoenaed materials. Therefore, the following files and

---

Policy).]

documents that NMCD seeks to withhold will be produced to the County Defendants: any police reports (Request 4); any escape flyer (Request 7);  and any FBI Criminal History or "rap sheets" (Request 5).

      C.  <u>Visitor questionnaires or applications forms</u>.

NMCD advised the County Defendants that it cannot release these documents because "visitors are not a matter of public record" and that these documents contain personal information such as "birthdates, social security numbers, and other personal identifying information."  [Doc. 35-2, Ex. B.] These documents will be produced with all personal identifying information redacted.

      D.      <u>Confidentiality Order</u>.

The documents which are the subject of County Defendants' subpoena and this Court's order are subject to confidentiality because they fall under the auspices of the PPA, and/or contain personal information on Hadely, other inmates, officers or guards, and visitors which are relevant only to Plaintiff's claims in this lawsuit.  Therefore, all documents produced pursuant to the County Defendants' subpoena will remain confidential and will be used only in connection with this lawsuit.  Finally, the documents which are the subject of this order will not be disclosed to any third party and will be returned or destroyed at the conclusion of this lawsuit.

IT IS THEREFORE ORDERED that the New Mexico Department of Corrections shall respond the County Defendants' subpoena [Doc. 35 at Ex. A] as follows: produce all documents responsive to Requests No. 1, 3, 4, 5, 6, 7, 9 and 12 directly to the County Defendants no later than August 19, 2011; produce all documents responsive to Request No. 8 no later than August 19, 2011; and produce all documents responsive to Requests 2, 10 and 11 to this Court for an *in camera* review no later than August 12, 2011.

IT IS HEREBY FURTHER ORDERED that all documents produced pursuant to this Order will remain confidential and be used only in connection with this lawsuit and will not be disclosed to anyone other than an attorney, legal assistant or other staff member representing a party or an expert witness/consultant employed to assist an attorney representing one of the parties.  It will be the responsibility of the attorneys retained by the parties in this matter to employ reasonable measures to control, consistent with this order, the protection of and access to these confidential documents.  All documents produced pursuant to this Order will be returned to NMCD or destroyed immediately following the conclusion of this lawsuit.

**ALAN C. TORGERSON**
**United States Magistrate Judge**